```
 1
 2
 3
 4
 5
 6
 7
 8                         UNITED STATES DISTRICT COURT
 9                        EASTERN DISTRICT OF CALIFORNIA
10                                 ----oo0oo----
11
    RYAN JOHN,                            Case No. 2:12-02529 WBS AC
12
              Plaintiff,
13                                        MEMORANDUM AND ORDER RE:
        v.                                MOTION TO COMPEL ARBITRATION
14
    HANLEES DAVIS, INC., a
15  California Corporation, doing
    business as HANLEES DAVIS
16  TOYOTA; and DOES 1 through 10,
17            Defendants.
18
19                                 ----oo0oo----
```

20         Plaintiff Ryan John brings this action against Hanlees
21  Davis, Inc. ("defendant"), and Does one through ten alleging
22  violations of federal and California state law arising from the
23  conditions of his employment.  Currently before the court is
24  defendant's motion to compel arbitration and stay the action.
25  I.  Relevant Facts and Procedural History
26         Plaintiff was hired by defendant as a Lubrication
27  Technician on or about June 12, 2009.  (Compl. ¶ 6 (Docket No.
28  1).)  In connection with his employment, plaintiff was required

                                    1

to sign two agreements. (Quinlan Decl. ¶ 3 (Docket No. 19).) The two paragraph-long agreements are both on the same page titled "AGREEMENTS." (Mot. to Compel Ex. A ("Agreements") at 1 (Docket No. 18).) The "At Will Employment Agreement" ("Employment Agreement") appears first and is followed by the "Binding Arbitration Agreement" ("Arbitration Agreement"). (Id.) Plaintiff signed and dated each. (Id. at 1-2.)

The Employment Agreement provides in relevant part:

> I agree as follows: My employment and compensation is terminable at-will, is for no definite period, and my employment and compensation may be terminated by the Company (employer) at any time and for any reason whatsoever, with or without good cause at the option of either the Company or myself. Consequently, all terms and conditions of my employment may be changed or withdrawn at Company's unrestricted option at any time, with or without good cause. No implied, oral, or written agreements contrary to the express language of the agreement are valid unless they are in writing and signed by the President of the Company . . . . This agreement is the entire agreement between the Company and the employee regarding the rights of the Company or employee to terminate employment with or without good cause, and this agreement takes the place of all prior and contemporaneous agreements, representations, and understandings of the employee and company.

(Id. at 1.)

The Arbitration Agreement provides in relevant part: "I also acknowledge that the Company utilizes a system of alternative dispute resolution which involves binding arbitration to resolve all disputes that may arise out of the employment context. . . . I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY." (Id. at 1-2.)

Plaintiff was terminated on or about April 14, 2011. (Compl. ¶ 9.) He initiated suit on October 9, 2012, bringing

2

claims for failure to pay regular and overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and the California Labor Code, Cal. Lab. Code § 201; failure to provide meal and rest periods, Cal. Lab. Code § 226.7; failure to pay all wages to discharged employee, Cal. Lab. Code § 201; failure to provide accurate itemized wage statements, Cal. Lab. Code § 226; failure to indemnify for purchase of tools pursuant to the California Labor Code, Cal. Lab. Code § 2802(a), and California Code of Regulations, 8 C.C.R. §§ 11010-11150; and unfair competition pursuant to the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.  (Docket No. 1.)

## II.  Legal Standard

The Federal Arbitration Act ("FAA") provides that a written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  It permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the] agreement.  Id. § 4.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213,

3

218 (1985).[1]

The Supreme Court has described § 2 of the FAA as "reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citations omitted). Accordingly, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)) (internal quotation marks omitted).

When a court is "asked to compel arbitration of a dispute, [the] threshold inquiry is whether the parties agreed to arbitrate." Van Ness Townhouses v. Mar Indus. Corp., 862 F.2d 754, 756 (9th Cir. 1988). This inquiry is properly one for the court, Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1048 (9th Cir. 1996), and in determining whether an agreement to arbitrate exists, it "should apply ordinary state-law principles that govern the formation of contracts," First Options of Chicago,

---

[1] Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

4

Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

III. Analysis

In short, plaintiff contends that there was no agreement to arbitrate between himself and defendant.  Plaintiff begins with the premise that together the Employment Agreement and Arbitration Agreement together constitute the "arbitration agreement between plaintiff and defendant . . . ."  (Opp'n at 3:25-27 (Docket No. 22).)  He then argues that the arbitration agreement "is illusory because defendant reserved its unrestricted right to change all terms and conditions of employment, including the arbitration [agreement], at any time and for any reason . . . ."  (Id. at 3:28-4:2.)  For easy reference, hereafter in this Order the court will refer to the provision granting defendant the right to change the terms and conditions of plaintiff's employment as a "unilateral modification clause."

For purposes of deciding this motion only, the court will accept plaintiff's premise that the Employment Agreement and the Arbitration Agreement constitute one integrated contract (together, the "Agreement").  The court must next determine whether the "terms and conditions of [plaintiff's] employment" include the agreement to arbitrate.  (Agreements at 1.)  Under California law guiding the interpretation of contracts:

> [T]he mutual intention of the parties at the time the contract is formed governs interpretation.  Such intent is to be inferred, if possible, solely from the written provisions of the contract.  The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation.  Thus, if the meaning a layperson would ascribe to contract language is

not ambiguous, we apply that meaning." Santisas v. Goodin, 17 Cal. 4th 599, 608 (1998) (internal quotation marks and citations omitted). Further, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

If the court finds an ambiguity in the language of the contract, it must resolve that uncertainty by considering the "objectively reasonable expectations" of the promisee. See Bank of the W. v. Superior Court, 2 Cal. 4th 1254, 1264 (1992). "This inquiry considers the disputed or ambiguous language in the context of the contract as a whole and of the relevant surrounding circumstances." Buckley v. Terhune, 441 F.3d 688, 698 (9th Cir. 2006) (citing Nissel v. Certain Underwriters at Lloyd's of London, 62 Cal. App. 4th 1103, 1111-12 (2d Dist. 1998)); Bank of the W., 2 Cal. 4th at 1265 ("[T]he court must interpret the language in context, with regard to its intended function in the [contract]."). "If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist." AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 822 (1990).

In the abstract, it is clear that the phrase "terms and conditions of my employment" could encompass a broad range of the various facets of the employment relationship, such as benefits, hours, pay, and dispute resolution. Plaintiff appears to construe the phrase to bear that expansive meaning in the Agreement because he asserts that the parties' agreement to arbitrate was one of the terms and conditions of his employment.

(Opp'n at 4:12-13.)  Plaintiff's interpretation is incorrect, however, because it disregards context.

The first sentence of the Agreement begins "My employment and compensation is terminable at-will . . . ." (Agreements at 1.)  The following sentence starts with the word "consequently" and provides that the terms and conditions of plaintiff's employment "may be changed or withdrawn at the Company's unrestricted option at any time, with or without good cause."  (Id.)  The word "consequently" limits the scope of the phrase "terms and conditions" to the "employment and compensation" that is the subject of the first sentence.  Thus, the sentence granting the employer the right to change the conditions of employment was clearly intended to refer to the rights of the employer in an at-will employment relationship.

This interpretation is buttressed by the Agreement's provision that defendant's discretion in changing the "terms and conditions" is not limited by "good cause."  (See id.)  "Good cause" is commonly understood as a condition that may imposed on an employer's ability to terminate employment, not as a basis to modify employee benefits or dispute resolution policies, for example.

It is also supported by the clause in the Employment Agreement section of the Agreement stating that the Employment Agreement is the entire agreement "regarding the rights of the Company or employee to terminate employment with or without good cause."  (Id.)  The phrase "terms and conditions" is located in that section.  It would be incongruous if the phrase encompassed more than the at-will employment relationship the Employment

7

Agreement reaches by its own terms. Moreover, that the parties intended "terms and conditions" be so limited is evidenced by the placement of the agreement to arbitrate in a separate section in the Agreement with its own heading and signature line.[2]

Because defendant's right to change or terminate the terms or conditions of employment is limited to the rights of the employer in an at-will employment relationship, defendant does not have that unfettered right with respect to the parties' agreement to arbitrate. Plaintiff's claim that the agreement to arbitrate is illusory because of the Agreement's unilateral modification clause therefore fails. See Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002) (an employer's promise to be bound by the arbitration process itself is sufficient consideration); see also Strotz v. Dean Witter Reynolds, 223 Cal. App. 3d 208, 216 (4th Dist. 1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other."), overruled on other grounds by Rosenthal v. Great W. Fin. Secs. Corp., 14 Cal. 4th 394 (1996).

But even if, as plaintiff argues, the unilateral modification clause applies to the agreement to arbitrate, California law precludes a finding that the agreement to arbitrate is illusory. Where parties exchange promises as consideration, those promises must be mutual in obligation.

---

[2] As defendant rightly notes, this also undermines plaintiff's claim that the two agreements constitute a single integrated contract.

Mattei v. Hopper, 51 Cal. 2d 119, 122 (1958).  Without such mutuality, an agreement lacks consideration and is not an enforceable contract.  Id.  A promise is illusory and provides no consideration for a contract where it "leaves a party free to perform or to withdraw from the agreement at his own unrestricted pleasure."  Id.  "Whether these problems are couched in terms of mutuality of obligation or the illusory nature of a promise, the underlying issue is the same--consideration."  Id.

In 24 Hour Fitness, Inc. v. Superior Court, 66 Cal. App. 4th 1199 (1st. Dist. 1998), Sierra Munshaw signed a document entitled "Certificate Of Acknowledgment Of Receipt & Reading the Personnel Handbook," which provided that she agreed to arbitrate any dispute arising out of her employment with Nautilus in accordance with the policies set forth in the "Employment Arbitration Manual."  24 Hour Fitness, Inc., 66 Cal. App. 4th at 1205.  In the personnel handbook she also received, a section on arbitration provided that the employee and Nautilus agreed to submit any disputes to arbitration and incorporated the "Employment Arbitration Manual."  Id.  It also contained a provision that granted Nautilus the right to change any provision in the handbook "at any time for any reason without notice" and stated that such changes must be in writing and a copy given to employees.  Id. at 1213-14.

The 24 Hour Fitness court rejected Munshaw's argument that the unilateral modification clause rendered the arbitration agreement illusory and lacking in consideration.  Id.  It explained that "Nautilus's discretionary power to modify the terms of the personnel handbook in writing indisputably carries

9

with it the duty to exercise that right fairly and in good faith. So construed, the modification provision does not render the contract illusory." Id. at 1214.[3]

Apparently acknowledging that the application of the implied covenant would render defendant's promise to arbitrate mutual and not illusory, plaintiff contends that the implied covenant does not apply here "because defendant's agreement expressly bars the application of any implied agreement from modifying the stated terms of the agreement . . . ." (Opp'n at 5:27-6:3 (quoting Agreements at 1).) The Agreement provides that "No implied, oral, or written agreements contrary to the express language of the agreement are valid unless they are in writing and signed by the President of the Company . . . ." (Agreements at 1.)

---

[3] In Sparks v. Vista Del Mar Child & Family Services, 207 Cal. App. 4th 1511 (2d Dist. 2012), the court stated that a purported agreement to arbitrate in an employee handbook "is illusory if, as here, the employer can unilaterally modify the handbook." Sparks, 207 Cal. App. 4th at 1523. The Sparks court reached that conclusion after only one sentence of analysis and found the arbitration agreement unenforceable for a number of reasons not at issue here (for example, the employee did not receive a copy of the arbitration rules and the arbitration provisions in the employee handbook were never called to his attention). Further, it cited only out-of-state authority for its conclusion and did not discuss 24 Hour Fitness.
   Here the court follows 24 Hour Fitness, which has an extensive analysis of California law, finding it to be the more persuasive and better reasoned decision.
   In Ingle v. Circuit City Stores, Inc., 328 F.3d 1165 (9th Cir. 2003), the Ninth Circuit held that a provision in an arbitration agreement giving the employer the unilateral power to terminate or modify the agreement rendered the contract substantively unconscionable. Ingle, 328 F.3d at 1179. It specifically noted that it drew "no conclusions as to whether this term, by itself, renders the contract unenforceable." Id. n. 23. Plaintiff does not argue that the agreement to arbitrate is unenforceable under the doctrine of unconscionability.

10

        Plaintiff's argument is contrary to the unambiguous language of the Agreement.  The implied covenant is not an agreement; it is a duty "of good faith and fair dealing in its performance and its enforcement" imposed by each contract.  <u>Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.</u>, 2 Cal. 4th 342, 371 (1992) ("<u>Carma</u>"); <u>see</u> Restatement (Second) of Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."); <u>Britz Fertilizers, Inc. v. Bayer Corp.</u>, 665 F. Supp. 2d 1142, 1166 (E.D. Cal. 2009) ("The implied covenant of good faith and fair dealing exists in every contract.").

        Plaintiff also argues that "the implied covenant of good faith and fair dealing cannot contradict the express language of the agreement, which gives defendant unlimited power to modify or withdraw any part of the agreement at any time for any reason."  (Opp'n at 6:4-6.)  The <u>24 Hour Fitness</u> court impliedly rejected this argument, however, when it held that Nautilus's discretionary power to modify its arbitration agreement with the plaintiff carried with it the duty to exercise that right fairly and in good faith.

        Moreover, the court in <u>Peleg v. Neiman Marcus Grp., Inc.</u>, 204 Cal. App. 4th 1425 (2d Dist. 2012), cautioned that "while the covenant may imply limitations making the use of that right fair and in good faith, it may not give rise to duties or obligations that conflict with the agreement's express terms." <u>Peleg</u>, 204 Cal. App. 4th at 1464 (citing <u>Carma</u>, 2 Cal. 4th at 374).  Despite that caution, the court then explained that, for example, "[a] unilateral modification provision that is silent as

11

1 to whether contract changes apply to claims, accrued or known, is
2 impliedly restricted by the covenant so that changes do not apply
3 to such claims." Id. at 1465.  In contrast, if "a modification
4 provision expressly addresses whether contract changes apply to
5 claims that have accrued or are known to the employer, the
6 covenant cannot create implied terms that contradict the express
7 language." Id. at 1466.  Under this reasoning, if the implied
8 covenant is applied to restrict the unilateral modification
9 clause in the Agreement by, for example, requiring defendant to
10 give plaintiff notice of any changes it might make to the
11 agreement to arbitrate, such a restriction would not conflict
12 with defendant's express power to make modifications.

13     Plaintiff has offered no other grounds for the court to
14 reject the proposition from 24 Hour Fitness that the
15 discretionary power to modify or terminate an agreement carries
16 with it the duty to exercise that power in good faith and fairly.
17 Accordingly, even assuming the unilateral modification clause in
18 the Agreement extends to allow defendant to modify or terminate
19 the agreement to arbitrate, 24 Hour Fitness compels the
20 conclusion that the agreement is not illusory, without mutuality,
21 or lacking in consideration.[4]  See Wilson v. United Health Grp.,

---

[4]     As plaintiff observes, various federal courts and state courts have found agreements to arbitrate unenforceable when one party retains the unilateral and unrestricted right to terminate or modify the agreement. See, e.g., Douglas v. Johnson Real Estate Investors, LLC, 470 F. App'x 823, 825-26 (11th Cir. 2012); Gourley v. Yellow Transp., LLC, 178 F. Supp. 2d 1196, 1202 (D. Colo. 2001); see also In re Zappos.com, Inc., Customer Data Sec. Breach Litig., 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012) (listing cases).  None of those courts, however, applied California contract law to reach that conclusion. See Leos v. Darden Restaurants, Inc., --- Cal. Rprt. 3d ----, 2013 WL 3179157, at *5

12

1  Inc., 2:12-CV-01349-MCE, 2012 WL 6088318, at *3 (E.D. Cal. Dec.
2  6, 2012) (England, J.) (holding that parties entered into an
3  enforceable arbitration agreement even though defendants reserved
4  the right to amend, modify, or terminate the arbitration
5  agreement so long as it gave employees thirty days' written
6  notice because they were still required to act fairly and in good
7  faith). Accordingly, the parties' agreement to arbitrate is
8  enforceable, and defendant's motion to compel arbitration and
9  stay must be granted.

    IT IS THEREFORE ORDERED that defendant's motion to
compel arbitration and stay the action pending the completion of
arbitration be, and the same hereby is, GRANTED. The clerk shall
administratively close this file, which may be opened by the
application of any party good cause showing.

DATED: July 9, 2013

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

(2d Dist. June 4, 2013) (recognizing that California courts applying California law treat the issue of the effect of unilateral modification clauses that apply to arbitration agreements differently than federal courts applying other state law have).
    Further, a unilateral modification clause in an at-will employment agreement does not and cannot mean that an employer may ignore the terms of the agreement as long as it remains in place. It is one thing to reserve the right to change an agreement in the future; it is another to say that an at-will employment agreement is not binding while it remains in place because it may be changed at any time. To the extent that any of those cases cited by plaintiff may be read to suggest that a unilateral modification clause means that an employer is not bound by its agreement with its employee, in this court's opinion they are wrong and this court is not bound by them.

13